**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ALFONSO VARELA and | § | |
| SANDRA SANTA MARIA VARELA, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-0343 |
| | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This tax-refund suit filed by Alfonso and Sandra Santa Maria Varela is one of a number

arising out of limited partnerships managed by American Agri-Corp., Inc. (AMCOR).  Following

the procedures under TEFRA,[1] the Internal Revenue Service issued proposed adjustments to the

AMCOR partnerships' tax returns disallowing certain expense deductions the limited partners had

claimed, which increased their income-tax liability for the corresponding tax year.  The IRS also

assessed enhanced or penalty interest under 26 U.S.C. § 6621(c).  The Varelas, like other limited

partners, paid and filed suit seeking a tax refund.

In June 2011, this court granted the government's motion for summary judgment on the

Varelas' refund claims for 1984 and 1985, finding no jurisdiction in a partner-level refund suit to

adjudicate the claim that the tax was assessed after the three-year statute of limitations under 26

U.S.C. § 6501(a) had expired.  (Docket Entry No. 45).  The remaining claim, addressed in this

---

[1]The Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97–248, 96 Stat. 324, 648–71 (codified in various sections of the Internal Revenue Code, including 26 U.S.C. §§ 6221–32).

memorandum and opinion, is for refund of penalty interest under § 6621(c).  The Varelas abandoned their 1984 penalty-interest refund claim, leaving the 1985 claim.  (*See* Docket Entry No. 54, at 1 n.4).  The government and the Varelas have cross-moved for summary judgment.  (Docket Entry Nos. 53–54; *see also* Docket Entry Nos. 58–61).

The government argues that this court lacks subject-matter jurisdiction over the penalty-interest refund claim for two reasons: first, resolving the claim under § 6621(c) would require the court to look at partnership items over which it lacks subject-matter jurisdiction under § 7422(h); and second, the Varelas failed to file a timely refund claim.  (Docket Entry No. 53).  The Varelas argue that they have presented evidence that the stipulated decision entered by the Tax Court did not include a finding that the transactions were tax-motivated or "sham."  As a result, the Varelas argue, the government cannot prove that their underpayment was previously determined to be tax-motivated in a partnership-level suit to which the Varelas are bound by claim preclusion.  The Varelas also argue that their claim was timely.  (Docket Entry No. 54).  The Varelas supplemented their arguments with two recent cases.  (Docket Entry Nos. 62, 64).  The government responded that neither case is relevant or helpful.  (Docket Entry Nos. 63, 66).

The Varelas also have moved for reconsideration of this court's grant of summary judgment on their limitations-based refund claims.  (Docket Entry No. 65).  The Varelas argue that a February 2012 decision of the Fifth Circuit, *A.I.M. Controls, L.L.C. v. Commissioner*, 672 F.3d 390 (5th Cir. 2012), requires summary judgment in their favor.  The government has responded, and the Varelas have replied.  (Docket Entry Nos. 67–68).  The government also has provided notice of a recent opinion of the Court of Federal Claims, *McCann v. United States*, — Fed. Cl. —, 2012 WL 1886746 (2012).  (Docket Entry No. 69).

2

Based on the motions and related filings, the record, and the applicable law, this court denies the Varelas' motion for reconsideration, (Docket Entry No. 65); grants the government's motion for summary judgment on the 1985 penalty-interest refund claim, (Docket Entry No. 53); and denies the Varelas' cross-motion on that claim, (Docket Entry No. 54).  The reasons for these rulings are set out below.

## I.    Background

A number of opinions detail the statutory background of the AMCOR cases.  *See, e.g.*, *Duffie v. United States*, 600 F.3d 362, 365–67 (5th Cir. 2010); *Irvine v. United States*, No. 4:08-cv-2568, 2012 WL 1552936, at *1–2 (S.D. Tex. Apr. 30, 2012); *Varela v. United States*, Civ. A. No. H-07-0343, 2011 WL 2173679, at *1–3 (S.D. Tex. June 1, 2011).  It need not be repeated here.

"In a partnership-level proceeding, the Tax Court has jurisdiction to determine all partnership items for the tax year to which the FPAA relates."  *Duffie*, 600 F.3d at 367.  For tax years before 1997, the Tax Court lacks jurisdiction over nonpartnership items and affected items.  *Id.* (citing 26 U.S.C. § 6226(f)).  In a partner-level refund action, district courts lack jurisdiction over partnership items.  *Id.* (citing 26 U.S.C. § 7422(h)).  Items converted from partnership items to nonpartnership items through settlement with the IRS fall within a district court's jurisdiction.  *Id.* (citing 26 U.S.C. § 6231(b)(1)(C)).  District courts generally have jurisdiction over a taxpayer's refund action.  28 U.S.C. §§ 1340, 1346(a)(1); *see also Matthews v. United States*, Civ. A. No. 00-4131, 2010 WL 2305750, at *3 (S.D. Tex. June 8, 2010), *aff'd sub nom. Scott v. United States*, 437 F. App'x 281 (5th Cir. 2011) (per curiam).  TEFRA, however, strips courts of subject-matter jurisdiction over refund actions attributable to partnership items.  26 U.S.C. § 7422.

Alfonso Varela was a limited partner in two AMCOR partnerships, Agri-Venture II and Coachella-85 Partners. In 1991, based on its investigation, the IRS issued Notices of FPAAs for those partnerships' 1984 and 1985 returns—which, in turn, would adjust the Varelas' 1984 and 1985 returns. After the partnerships' TMPs—Frederick Behrens and Robert Wright—declined to contest the FPAAs, individual partners filed partnership-level suits in the Tax Court under 26 U.S.C. § 6226(b). The partners argued that § 6501's three-year assessment period had lapsed. In 1997, while these suits proceeded before the Tax Court, several individual partners settled their income-tax liability with the IRS by executing Forms 870-P(AD). For those partners who did not settle with the IRS, including the Varelas, the TMPs, who had by now intervened on behalf of the partnerships, and the IRS agreed to be bound by the results of a test case. In that test case, the Tax Court accepted the IRS's argument and ruled in its favor on the limitations ground. *See Agri-Cal Venture Assocs. v. Comm'r*, 80 T.C.M. (CCH) 295 (2000).

After that ruling, the TMPs and the IRS filed a Joint Status Report with the Tax Court in December 2000 announcing "a basis for settlement of the partnership items at issue" in the AMCOR-partnership cases. (Docket Entry No. 25, Ex. 12, at 1 (0076)). The report provided "[a] summary of the contingent basis for settlement." (*Id.*). For each AMCOR-partnership case, the TMPs and the IRS stated as follows in their joint report:

> The Decision to be entered in each partnership proceeding will contain the following factual findings by the Court:
>
> > That the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when

> computed under the partnership's cash receipts and
> disbursements method of accounting.
>
> That the assessment of deficiencies in income tax that
> are attributable to the adjustments to partnership items
> for the years [1984, 1985 and 1986] are set forth
> herein are not barred by the provisions of I.R.C.
> § 6229.

(*Id.*, at 6 (0081)).  The report stated that this settlement:

> will conclusively determine all controversies arising from the events
> except for claims or defenses . . . which are unrelated to the
> determination of partnership items, affected items or the computation
> of interest due under I.R.C. § 6621(c).  The parties expressly waive
> by stipulation in the Decision any right to take an appeal from the
> decision or any opinions entered by the Tax Court in these
> proceedings.

(*Id.*, at 6–7 (0081–82)).  Counsel for the TMPs and for the IRS signed the report.  (*Id.*, at 7 (0082)).

In April 2001, the IRS moved to have decisions entered in each of the AMCOR-partnership cases.  This motion confirmed that the TMPs had reached "contingent agreements" to settle the disputed partnership items in each AMCOR case.  (Docket Entry No. 25, Ex. 13, ¶ 8 (0086)).  The agreement would bind "[a]ll partners in each partnership whose partnership items are to be determined in the FPAA Cases and who meet the interest requirements of I.R.C. § 6222(d)"—such as Alfonso Varela—once the Tax Court entered stipulated decisions in all cases consistent with the agreement and those decisions became final.  (*Id.*, ¶ 9 (0086)).  The decisions would become final after all partners declined to object within 90 days after the motion was filed.  (*See id.*, ¶ 19 (0088–89); *see also* Docket Entry No. 54, at 6).  This provision appears to have been necessary because the TMPs "agree[d] to the proposed Decisions in these cases, but d[id] not certify that no party objects to the granting of [the IRS]'s Motion for Entry of Decision."  (Docket Entry No. 25,

Ex. 13, ¶ 18 (0088)).  These provisions also appeared in Attachment C to the motion, the agreement itself.  (*See id.* at 10–16 (0093–99)).

No partners objected within the 90-day period.  The Tax Court granted the motion in July 2001.  (*See id.* at 1 (0084)).  The Tax Court simultaneously entered stipulated decisions in each of the AMCOR-partnership cases.  In the *Coachella-85 Partners* decision, the Tax Court stated as follows:

> That the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting; . . .
>
> That the assessment of deficiencies in income tax that are attributable to the adjustments to partnership items for the year 1985 is not barred by the provisions of I.R.C. § 6229.

(Docket Entry No. 25, Ex. 19, at 2 (0159)).

The IRS assessed the Varelas $13,895 in taxes and $74,914 in penalty interest for the 1984 tax year, and $26,016 in taxes and $121,558.88 in penalty interest for the 1985 tax year.  The Varelas paid these amounts in 2002 and requested a refund from the IRS in 2004.  The IRS denied that request in January 2005.  The Varelas filed this tax-refund suit in January 2007.

## II.    The Motion for Reconsideration

Because reconsideration of the Varelas' limitations-based refund claims would moot the pending cross-motions for summary judgment on the remaining refund claim for penalty interest, the reconsideration motion is considered first.  "While the Federal Rules of Civil Procedure do not provide for a motion for reconsideration, such a motion may be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment or order."

6

*Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). Whether a motion is considered under Rule 59(e) or Rule 60(b) depends on when it is filed. "If the motion is filed within ten days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion." *Id.* The 2009 amendments to the Federal Rules of Civil Procedure extended the time for filing a Rule 59(e) motion from 10 days to 28 days. *See* FED. R. CIV. P. 59 Committee Note (2009); *Williams v. Thaler*, 602 F.3d 291, 303 n.7 (5th Cir. 2010). Neither Rule 59(e)'s 28-day deadline nor Rule 60(b)'s one-year deadline may be extended. FED. R. CIV. P. 6(b)(2).

The Varelas moved for reconsideration more than 28 days after this court granted summary judgment for the government. Rule 60(b), not Rule 59(e), governs. "Unlike a motion for new trial under Rule 59(a), however, Rule 60(b) only encompasses specifically enumerated grounds." *Weckesser v. Chicago Bridge & Iron*, 447 F. App'x 526, 529 (5th Cir. 2011) (per curiam). They are:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b). Rule 60(b)(1) applies when the party seeking relief from judgment bases its motion on a legal error by the district court. *See Benson v. St. Joseph Regional Health Ctr.*, 575

F.3d 542, 547 (5th Cir. 2009).[2]  A Rule 60(b)(1) motion "may be used to rectify an obvious error

of law, apparent on the record."  *Id.* (internal quotation marks omitted); *McMillan*, 4 F.3d at 367.

The "focus on 'obvious' legal error, which [the Fifth Circuit] as a matter of course would correct

anyway, is to prevent a Rule 60(b) motion from being used as a substitute for a timely appeal on

disputed issues."  *Benson*, 575 F.3d at 547.

The basis of the Varelas' argument for reconsideration is that the Fifth Circuit's recent

decision in *A.I.M. Controls* confirms their earlier summary-judgment argument that § 7422(h)

should not be interpreted to bar their limitations-based refund claim under § 6501.  The government

contests this reading of *A.I.M. Controls.*  This court finds the Varela's proposed interpretation of that

case unpersuasive as a basis for reconsideration.

*A.I.M. Controls* holds that, under § 6226(b), the 150-day deadline for non-TMP partners

such as Alfonso Varela to challenge an FPAA in federal court is jurisdictional and cannot be

equitably tolled.  *See generally* 672 F.3d at 395.  *A.I.M. Controls* does not hold that all provisions

of § 6226 should be "strictly construed."  (*See* Docket Entry No. 65, at 5).  The issue in *A.I.M.*

*Controls* was whether one statutory subsection—§ 6226(b)—was jurisdictional.  In answering "yes"

to that question, the Fifth Circuit did not rely on broad pronouncements about statutory construction.

*A.I.M. Controls* does not appear to affect this court's previous conclusion that, based on the record

and extensive case law, § 7422(h) barred review of the Varelas' limitations-based § 6501 claim.  As

in *Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004), one of the Fifth Circuit precedents

discussed at length in this court's previous opinion, the Varelas' "refund claims are based entirely

---

[2]Rule 60(b)(6) does not apply to claims of legal error: "claims of legal error or mistake . . . are subsumed under subsection (1)."  *McMillan v. MBank Fort Worth, N.A.*, 4 F.3d 362, 367 (5th Cir. 1993); *accord Castleberry v. CitiFinancial Mortg. Co. Inc.*, 230 F. App'x 352, 356 (5th Cir. 2007) (per curiam).

on the theory that the IRS had no authority to assess tax against them in [2002] because the FPAA statute of limitations had run for the years [1984 and 1985]." *Id.* at 156. "[B]ecause the FPAA limitations issue affects the partnership as a whole," it is a partnership item, which a district court lacks jurisdiction to review. *Id.* at 156–57; *accord McCann*, 2012 WL 1886746, at *4 ("As made explicit in *Prati*, the statute of limitations is categorically a partnership item. Thus, any refund claim based on a violation of the statute of limitations is an action 'for a refund attributable to [a] partnership item[],' I.R.C. § 7422(h), and barred."); *Matthews*, 2010 WL 2305750, at *3–4 ("§ 7422(h) deprives district courts of subject matter jurisdiction to consider § 6229(a) statute of limitations arguments in taxpayer refund suits because § 6229(a)'s limitations period is a partnership item."), *aff'd sub nom. Scott*, 437 F. App'x 281.

The Varelas are not entitled to reconsideration because they have not demonstrated a legal error or other basis that would require a different result. The motion for reconsideration is denied.

## III. The Cross-Motions for Summary Judgment

The Varelas and the government have cross-moved for summary judgment on the Varelas' remaining claim for refund of the penalty interest assessed for the 1985 tax year, under 26 U.S.C. § 6621(c), based on the Coachella-85 partnership.

### A. The Applicable Law

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks omitted). "'If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.'" *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and explain how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). When the parties cross-move for summary judgment, the court must review "each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010)

(internal quotation marks and alteration omitted).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  FED. R. CIV. P. 56(e)(2).

### B.    Recent Case Law

A number of recent circuit cases—*Prati v. United States*, 603 F.3d 1301 (Fed. Cir. 2010) ("*Prati III*"); *Duffie v. United States*, 600 F.3d 362 (5th Cir. 2010); and *Keener v. United States*, 551 F.3d 1358 (Fed. Cir. 2009)—arise from similar partnerships and involve similar issues.  More recent district-court cases have applied those cases.  *See, e.g.*,  *McCann v. United States*, — Fed. Cl. —, 2012 WL 1886746 (2012); *Irvine v. United States*, No. 4:08-cv-2568, 2012 WL 1552936 (S.D. Tex. April 30, 2012); and *Kercher v. United States*, No. 4:07-cv-310, 2012 WL 874325 (E.D. Tex. Mar. 14, 2012).  These district cases were brought by limited partners in AMCOR partnerships.  Those suits not only raised claims similar to those here but also involved similar arguments in support of those claims made by the same attorneys who represent the Varelas.  *Kercher* and *McCann* involved nonsettling partners who participated in stipulated decisions entered by the Tax Court. The district courts rejected the partners' claims for refunds of penalty interest.  In *Irvine*, the partners settled their income-tax liability with the IRS in 1997 and did not agree to be bound by stipulated decisions entered by the Tax Court.

Because the Fifth Circuit's decision in *Duffie* is binding on this court, it is useful to describe it.  John Duffie was a limited partner in an AMCOR partnership, Texas Farm Venturers.  The facts described above for the Agri-Venture II and Coachella-85 partnerships—the IRS investigation, the test case before the Tax Court, the stipulated decision entered by the Tax Court—applied to Duffie as well.  In September 2006, the Duffies sued in the Southern District of Texas seeking a refund for

11

the tax and penalty-interest assessments.  The Duffies abandoned their tax-refund claim but pursued

their penalty-interest refund claim under § 6221(c).  The Duffies and the government cross-moved

for summary judgment.  The district court found that claim preclusion applied to prevent the Duffies

from relitigating the Tax Court's determination of the partnership-item component of the § 6621(c)

interest assessment, including the determination that the transactions resulting in the adjustments

were sham transactions; that § 7422(h) deprived the district court of jurisdiction to consider the

Duffies' claim that the Tax Court erred in determining that the transactions were shams or tax-

motivated, despite the fact that they were affected items and not partnership items (because whether

the transactions were shams was the partnership-item component of an affected item); and the

Duffies' failure to file a timely refund claim deprived the district court of subject-matter jurisdiction.

The Fifth Circuit adopted the district court's opinion.  600 F.3d at 364.

A critical issue in the claim-preclusion analysis was whether the Tax Court's decision in

*Texas Farm Venturers* determined that the partnership's transactions leading to the IRS's

adjustments were tax-motivated transactions.   The Duffies argued "that the Tax Court's

determination that the partnership transactions that resulted in the adjustments 'lacked economic

substance, as described in former I.R.C. § 6652(c)(3)(A)(v)' is not a finding of tax-motivated

transactions." 600 F.3d at 373.  The court rejected the Duffies' argument, agreeing with other courts

that "had examined the language in the consolidated [AMCOR] cases and found that it clearly stated

that the partnership's transactions were tax-motivated, allowing the IRS to impose interest under

Section 6621(c)."  *Id.* (citing *Nault v. United States*, 517 F.3d 2, 5 (1st Cir. 2008); and *Kimball v.*

*Comm'r*, 95 T.C.M. (CCH) 1306 (2008)).   The court concluded that "[t]he Tax Court did

determine—and had jurisdiction to do so—that the partnership's transactions resulting in the

adjustments were a sham." *Id.* at 378.  As a result, claim preclusion barred the Duffies from "disput[ing] or relitigat[ing] the determinations made in the Tax Court as to the partnership-item components of the Section 6621(c) interest assessment," including that the "Texas Farm Venturers transactions that resulted in the adjustments were sham transactions." *Id.* at 382.  Claim preclusion, however, did not prohibit the Duffies from litigating "the nonpartnership-item components of Section 6621(c) interest: whether their underpayment was substantial and whether it was attributable to the transaction previously determined to be tax motivated." *Id.*

The court also analyzed whether it had subject-matter jurisdiction over the Duffies' penalty-interest refund claim.  Under 26 U.S.C. § 7422(h), "[n]o action may be brought for a refund attributable to partnership items[.]"  Because the Duffies' claim rested on their argument that the Tax Court incorrectly determined that Texas Farm Venturers engaged in tax-motivated transactions, their refund claim was based on "the nature of a partnership's activities" and therefore "based on the determination of a partnership item."  600 F.3d at 383.  Section 7422(h) deprived the district court of jurisdiction to review that claim.

Finally, apart from § 7422(h), the court found an additional bar to review: limitations.  "A taxpayer's failure to file a timely refund claim with the IRS deprives the district court of subject-matter jurisdiction." *Id.* at 384.  Under TEFRA, a refund claim based on the erroneous computation of a partnership adjustment must be filed with the IRS "within six months after the IRS mails a notice of computational adjustment to the partner." *Id.* at 385 (citing 26 U.S.C. § 6230(c)(2)(A)).  A refund claim based on a substantive affected item—"an item that is dependent on factual determinations to be made at the individual partner level"—is subject to the Tax Code's two-year statute of limitations. *Bartimmo v. United States*, 525 F. Supp. 2d 879, 884 (S.D. Tex. 2007).

13

Because the only factual determination to be made was whether the Duffies' "tax underpayment resulting from the partnership transactions previously found to be tax-motivated was substantial, $1,000 or greater," the challenged interest assessment was a computational affected item subject to TEFRA's six-month statute of limitations. *Duffie*, 600 F.3d at 386. The Duffies did not file their refund claim until almost two years after receiving the IRS's adjustment notice. As a result, their claim was untimely, stripping the district court's jurisdiction to review the claim. *Id.*

The court cited to the Federal Circuit's decision in *Keener v. United States*, 551 F.3d 1358 (2009). *Duffie*, 600 F.3d at 364. In *Keener*, another AMCOR tax-refund suit, the partners had argued that the FPAAs had not conclusively determined that their tax underpayments, leading to the adjustments, were attributable to tax-motivated transactions. Though the Federal Circuit rejected this argument on the merits, it did so on the assumption that § 7422(h) did not preclude the court from reaching the argument. *See* 551 F.3d at 1367 ("Even assuming that the Court of Federal Claims had jurisdiction over this argument . . .").

The more recent district-court cases do not definitively resolve whether § 7422(h) bars jurisdiction to determine whether the Tax Court in fact made a tax-motivated transactions finding. In *Kercher*, which involved facts even closer to the present case than *Duffie*, the district court rejected the taxpayers' argument that it was necessary to analyze first whether claim preclusion applied to the Tax Court partnership-level decision before determining jurisdiction under § 7422(h). Like Alfonso Varela, Kenneth Kercher was a limited partner in the Coachella-85 partnership. After the *Coachella-85 Partners* decision, in July 2002, the IRS mailed Kercher a notice of computational adjustment. A month later, the IRS assessed him for additional tax and penalty interest under § 6621(c) for the 1985 tax year. Kercher paid the assessment in May 2005 and filed a refund claim

14

with the IRS.  After the IRS denied that claim in June 2005, the Kerchers sued in the Eastern District of Texas, seeking a refund of the tax and penalty-interest assessments.  2012 WL 874325, at *5.  The Kerchers and the government cross-moved for summary judgment on this refund claim.  As in *Duffie*, the government argued that the district court lacked subject-matter jurisdiction to hear the claim under § 7422(h) and that the claim was not timely filed.

The district court first determined that limitations barred the Kerchers' refund claim for the tax assessment.  "Since the additional tax liability is a computational affected item, Kercher was required to file his refund as to this claim within TEFRA's six-month limitations period."  *Id.* at *8 (citing 26 U.S.C. § 6230(c)(2)(A); *Duffie*, 600 F.3d at 386)).  The Kerchers argued that the IRS's notice of computational adjustment was defective and had not triggered the limitations period.  The court rejected this argument, concluding that the Form 4549A sent to the Kerchers with the notice—which clearly stated the additional tax due—adequately notified them of the additional tax liability.  *Id.*

On the other hand, the court concluded that limitations did not bar the Kerchers' penalty-interest refund claim.  The Kerchers argued that the notice of computational adjustment was defective, pointing to the Form 4549A's listing of "0.00" for "TMT Interest—computed 03/22/2003 on TMT underpayment."  *Id.* at *9.  One case before the Court of Federal Claims, under nearly identical circumstances, had held that the listing "d[id] not indicate that the IRS actually intended to apply the enhanced interest rate specified in former Section 6621(c)."  *McGann v. United States*, 76 Fed. Cl. 745, 759 (2007).  The notice did not trigger the six-month limitations period, making the taxpayers' refund claim timely.  *See id.* at 761.  The *Kercher* court agreed with *McGann*.  2012 WL 874325, at *10.

15

The *Kercher* court then analyzed whether § 7422(h) was a bar to review of the refund claim. The Kerchers, citing *Duffie*, "argue[d] that the Court must first address whether *res judicata* applies to the Tax Court's partnership-level proceeding prior to determining whether I.R.C. § 7422(h) applies." *Id.* at *11. The district court rejected this argument about the order of analysis:

> In *Duffie*, the court addressed *res judicata* as an alternative ground for denying jurisdiction. *Duffie* did not analyze the *res judicata* issue as a prerequisite to reaching I.R.C. § 7422(h). *See Duffie*, 600 F.3d at 382; *Keener v. United States*, 551 F.3d 1358, 1365 (Fed. Cir. 2009); *Rowland v. United States*, No. 7:07-cv-18-O, 2011WL 2516170, at *13–14 (N.D. Tex. June 22, 2011). The Court does not believe that it is either necessary or required to address any *res judicata* claim prior to examining I.R.C. § 7422(h).

*Id.* The court noted that the Kerchers raised the same argument that the taxpayers in *Keener* had raised before the Federal Circuit: "that the IRS improperly imposed penalty interest on them because their underpayments were not attributable to TMTs." *Id.* The Federal Circuit concluded in *Keener* that it lacked jurisdiction to review the claim because "the partners' positions that the partnerships' transactions were not 'shams' would amount to review of a partnership item." *Id.* (citing *Keener*, 551 F.3d at 1366–67). The *Kercher* court followed the same reasoning. "Kercher seeks a refund based upon the nature of the partnership's transaction. Since the nature of the partnership's transaction is a partnership item, Kercher's claim is 'attributable to' a partnership item and is therefore barred under I.R.C. § 7422(h)." *Id.*

The *Kercher* court also rejected the taxpayers' argument, again one that was raised and rejected in *Keener*, that § 7422(h) did not bar a court from first determining whether the Tax Court had made a determination that the transactions leading to the adjustments were tax-motivated:

> The Court finds that Kercher's argument on whether the Tax Court ever made a determination at the partnership-level of a TMT is nevertheless an inquiry into a partnership item. "That question is no

16

less 'attributable to partnership items' than the question of whether
the underlying transactions were themselves TMTs."

*Id.* at *12 (quoting *Acute Care Specialists II, Ltd. v. United States*, No. 11 C 465, 2011 WL

6318733, at *8 (N.D. Ill. Dec. 14, 2011)).  And, in any event, the court noted that the language of

the stipulated decision entered by the Tax Court equated lack of economic substance with sham

transaction.  *Id.* (citing *Prati III*, 603 F.3d at 1309; *Rowland*, 2011 WL 2516170, at *13–14).

Because the Kerchers' claim was "attributable to" the nature of the Coachella-85 partnership's

transactions, the court concluded, § 7422(h) deprived the district court of subject-matter jurisdiction.

        *Irvine*, like *Duffie* and *Kercher*, involved a tax-refund suit brought by partners of AMCOR

partnerships, with a critical difference.  "In 1999 and 2000, Plaintiffs settled with the IRS on Forms

870–P(AD), agreeing, as applicable, that 50% or more of each partnership's original partnership-

item deductions were correct as originally reported." 2012 WL 1552936, at *3.  These partners were

not parties to the 2000 *Agri-Cal Venture* test case and stipulated Tax Court decisions.  The IRS

assessed the *Irvine* partners additional tax and penalty interest under the Forms 870–P(AD).  The

partners paid their assessments, filed refund claims with the IRS, then sued in the Southern District

of Texas for refunds of the tax and penalty-interest assessments.  *Id.*

        As in *Duffie* and *Kercher*, the *Irvine* court held that § 7422(h) barred review of the partners'

limitations-based tax-refund claims.  These claims "require[d] the Court to determine whether

extensions under Section 6229 apply, which, in turn, require[d] the Court to make determinations

of partnership items," barred by § 7422(h).  *Id.* at *7.  Unlike the courts in *Duffie* and *Kercher*,

however, the *Irvine* court granted summary judgment in the partners' favor on their penalty-interest

refund claims under § 6621(c).  *See id.* at *8.  The *Irvine* partners were not parties to the *Agri-Cal*

*Venture* test case or the subsequent stipulated decisions before the Tax Court.  Their case was

similar to *Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004), which also involved partners who settled with the IRS.  *Id.* at 154.  Their settlement agreements—unlike the stipulated decisions entered by the Tax Court in *Duffie*—had no tax-motivated-transaction determination.  Absent this determination, the Fifth Circuit concluded, the IRS's assessment of penalty interest was improper and the partners were entitled to refunds.  *See id.* at 162–63.  Because *Weiner* rather than *Duffie* controlled, the *Irvine* court concluded that the settling partners in that case were entitled to refunds of the penalty-interest assessments as well.  *See* 2012 WL 874325, at *8–9.

*McCann* is the most recently decided tax-refund case involving limited partners of an AMCOR partnership.  Lawrence McCann was a limited partner in two AMCOR partnerships, Emperor Seedless-85 and Agri-Cal Venture Associates.  Like the partners in *Duffie* and *Kercher* (and like Alfonso Varela), McCann was a nonsettling partner who agreed to be bound by the Tax Court's stipulated decision.[3]  The McCanns paid their assessments, unsuccessfully sought a refund from the IRS, and then filed a refund suit before the Court of Federal Claims.  *See* 2012 WL 1886746, at *1.

As the *Irvine* partners and the partners here, the McCanns argued that limitations barred the IRS's additional tax assessment.  The court made short work of this claim, finding it clearly foreclosed under the Federal Circuit's decision in *Prati III*, holding that "the statute of limitations issues is categorically a partnership item," barring review under § 7422(h).  2012 WL 1886746, at *4.

---

[3]*McCann* was a consolidated case, involving the tax-refund claims by the McCanns and another couple, the Eppses.  The Eppses, unlike the McCanns (and like the Irvines), did settle their tax liability with the IRS through executing a Form 870–P(AD).  2012 WL 1886746, at *1.  This factual distinction led to the court to analyze the Eppses' penalty-interest claim differently from the McCanns' (though ultimately reaching the same conclusion).  *See id.* at *8–9.  Because the Varelas are more factually similar to the McCanns, the court's analysis of the McCanns' claims is relevant.

Like the *Varelas*, the McCanns next argued that the Tax Court had not made a tax-motivated-transactions determination that would permit the IRS's assessment of penalty interest.   The government responded that § 7422(h) barred the court from reviewing this argument because "*any* claim related to former Section 6621 penalty interest"—no matter the argument underlying the claim—"is inevitably a dispute over a partnership item and therefore cannot be heard in this court." *Id.* at *5.   The *McCann* court rejected the government's contention.   *McCann* read the Federal Circuit's decisions in *Keener* and *Prati III* not as establishing that "*all* claims involving former Section 6621 necessarily would be attributable to partnership items," but instead as "ma[king] the commonsense observation that a claim which would operate to overturn an earlier partnership-level finding is, of course, attributable to a partnership item." *Id.*   The "[i]nherent" holding of the Federal Circuit in *Keener* and *Prati III* was that the Tax Court, in those cases, had in fact made a tax-motivated-transactions determination, barring review under § 7422(h). *Id.* at *6.   The *McCann* court explained why the court's determination of jurisdiction turned on the tax-motivated-transactions determination:

> If no such determination is made as to a particular partner, then the penalty interest is not based on a partnership transaction involving that partner.  Consequently, a claim brought by that partner would not be attributable to a partnership item (and barred by § 7422(h)), *because no underlying partnership item would exist.*

*Id.* (emphasis added).  The court cited *Duffie* in rejecting the government's argument that "*any* claim related to former § 6621 penalty interest is inevitably a dispute over a partnership item and therefore cannot be heard in this court."  *Id.* at *5.  "As explained by the Fifth Circuit in a similar AMCOR case, 'interest under [former] Section 6621(c)[] is an "affected" item that has both partnership and nonpartnership components. . . . [A] partner-level challenge of the nonpartnership-item component

of Section 6621(c) [includes] . . . *whether it was attributable to the transaction previously determined* at the partnership level to be tax-motivated." *Id.* at *6 (quoting *Duffie*, 600 F.3d at 372, 380). Under *McCann*, a district court has jurisdiction to determine its own jurisdiction under § 7422(h) by confirming the existence (or absence) of an underlying tax-motivated-transactions determination.

Like the Varelas, the McCanns introduced an affidavit from Behrens, the partnerships' TMP. He stated that, in stipulating to the Tax Court decisions, he had refused to concede that the transactions were tax-motivated. The *McCann* court rejected the affidavit as "unhelpful." First, "[t]he affidavit purports to present new facts as to the meaning of the earlier Tax Court decisions, but '[t]he interpretation of a court order involves a question of law,' not fact." *Id.* at *7 (quoting *Williams v. Principi*, 310 F.3d 1374, 1377 (Fed. Cir. 2002)). Second, even assuming that the court should construe the Tax Court's stipulated decisions as contracts, the affidavit was "superfluous" because the decisions were unambiguous. *Id.* The citation to § 6621(c)(3)(A)(v) "suffices to establish a finding of sham." *Id.* The phrase "so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv)" also established a finding of tax-motivated transactions. *Id.* at *8. "Thus, each phrase independently establishes that the adjustments were attributable to the partnerships' tax-motivated activities." *Id.* (quoting *Duffie*, 600 F.3d at 373). Accordingly, because the Tax Court had made a tax-motivated-transactions determination, the McCanns' refund claim for penalty interest was attributable to a partnership item and thus barred by § 7422(h).

## C.    Analysis

As in *Duffie* and *Kercher*, the government makes three arguments in favor of summary judgment on the Varelas' remaining penalty-interest refund claim: (1) claim preclusion bars the claim; (2) this court lacks subject-matter jurisdiction because the claim is for "a refund attributable to partnership items," 26 U.S.C. § 7422(h); and (3) this court lacks subject-matter jurisdiction because the Varelas did not timely file the claim with the IRS.

The Varelas first argue that the government has conceded this court's subject-matter jurisdiction by invoking and arguing the affirmative defense of claim preclusion. (*See* Docket Entry No. 59, at 7 ("Raising that affirmative defense concedes that this Court has subject matter jurisdiction of its merits[.]").  This argument ignores the fact that parties cannot confer subject-matter jurisdiction through agreement or waiver. *E.g.*, *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 786 (5th Cir. 2012).  Nor can this court "bypass the jurisdictional question" by assuming that subject-matter jurisdiction exists.  *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 531 n.1 (5th Cir. 2006); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("In *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998), this Court adhered to the rule that a federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits.").  "[Q]uestions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (quoting 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.30[1] (3d ed. 1998)).[4]

The Varelas argue that *Duffie* requires this court first to conduct a claim-preclusion analysis to resolve whether the Tax Court previously determined that the Coachella-85 partnership

---

[4]The exception to this rule, inapplicable here, is that "a federal court may decide a straightforward question concerning personal jurisdiction without first determining that it has subject-matter jurisdiction over the case." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005) (citing *Ruhrgas*, 526 U.S. at 588).

transactions leading to the adjustments at issue in this case were tax-motivated transactions.  The Varelas argue that resolving the claim-preclusion question is necessary to determine if § 7422(h) bars their claim.  "If no prior partnership-item TMT determination was made, then § 7422(h) cannot bar the § 6621(c) claim because it is not attributable to (*i.e.*, does not challenge) a partnership item." (Docket Entry No. 59, at 14).  *McCann* supports the Varelas' position.[5]  The government responds that § 7422(h) bars even this argument.  (*See* Docket Entry No. 60, at 5–6).  *Kercher*, *Acute Care Specialists II*, and *Bush v. United States*, 101 Fed. Cl. 791, 797–98 (2011), as well as *Prati III*, support the government's position.

Under either approach, § 7422(h) clearly bars the Varelas' penalty-interest refund claims. The record is clear that the Tax Court did determine that the partnership transactions leading to the adjustments were tax-motivated, barring review under § 7422(h).  And if § 7422(h) precludes this court from reaching that question, the Varelas' claim also fails.

Federal courts lack jurisdiction over tax-refund claims that are "attributable to partnership items[.]"  26 U.S.C. § 7422(h).  The Tax Code defines a "partnership item" as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level."  *Id.* § 6231(a)(3). Under the Treasury Regulations, items that "are more appropriately determined at the partnership level than at the partner level" include "[i]tems of income, gain, loss, deduction, or credit of the partnership[.]"  26 C.F.R. § 301.6231(a)(3)–1(a).  Additionally, "[t]he term 'partnership item' includes the accounting practices and the *legal and factual determinations* that underlie the

_____

[5]*Irvine* also appears to support the Varelas' position, though it is less clear.  *See* 2012 WL 1552936, at *8–9.

determination of the amount, timing, and *characterization* of items of income, credit, gain, loss,

deduction, etc." *Id.* § 301.6231(a)(3)–1(b) (emphasis added).  As *Keener*—which the Fifth Circuit

cited approvingly in *Duffie*, 600 F.3d at 364—noted, "the applicability of § 7422(h) turns on whether

Taxpayers' refund claims are due to, caused by, or generated by a partnership item."  551 F.3d at

1365 (internal quotation marks omitted).  Section 7422(h) applies when a taxpayer's claim is due

to, caused by, or generated by the legal and factual determinations that underlie the determination

of the characterization of partnership items.

In *Duffie*, the taxpayers similarly argued that the language of the partnership-level decision

did not amount to a determination that the transactions at issue were tax-motivated transactions.  The

challenged language in that case was:

> That the adjustments to partnership income and expense for the
> taxable year 1984 are attributable to transactions which lacked
> economic substance, as described in former I.R.C.
> § 6621(c)(3)(A)(V), so as to result in a substantial distortion of
> income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when
> computed under the partnership's cash receipts and disbursements
> method of accounting.

600 F.3d at 369.  The *Duffie* court rejected that argument, concluding that the Tax Court had

determined that the disputed transactions were tax-motivated transactions:

> In other AMCOR partnership cases, courts have examined the
> language from the Tax Court's agreed decision in the consolidated
> cases and found that it clearly stated that the partnership's
> transactions were tax-motivated, allowing the IRS to impose interest
> under Section 6621(c).  *See Nault v. United States*, 517 F.3d 2, 5 (1st
> Cir. 2008); *Kimball v. Comm'r of Internal Revenue*, T.C. 2008-78,
> 2008 WL 862339 (U.S. Tax Court 2008) (because the partnership's
> transactions lacked economic substance, they constituted tax
> motivated transactions).  In *Nault*, the court stated:

> > The reference to [Section 6621(c)(3)(A)(v)], which
> > helps to define tax-motivated transactions, confirms

> that the transactions were "sham[s] or fraudulent transaction[s]" and therefore lacked economic substance. The phrase "so as to result in a substantial distortion of income and expense" simply tracks the language of the former 26 U.S.C. § 6621(c)(3)(A)(iv), which likewise helps to define tax-motivated transactions. Thus, each phrase independently establishes that the adjustments were attributable to the partnerships' tax-motivated activities.

> 517 F.3d at 5 (internal citations omitted).

*Id.* at 373.

The language in the *Coachella-85 Partners* decision is materially indistinguishable from the language at issue in *Duffie*. The *Coachella-85 Partners* decision stated in relevant part:

> That the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting[.]

(Docket Entry No. 25, Ex. 19, at 2 (0159)). As *Duffie* and *Nault* make clear, this decision contains two separate, clear references to tax-motivated transactions: (1) "transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v)" and (2) "so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv)[.]" The Tax Court in *Coachella-85 Partners* unquestionably made a determination that the disputed transactions leading to the adjustment were tax-motivated transactions. *Accord McCann*, 2012 WL 1886746, at *7–8.

The Varelas make two arguments to avoid this result. First, they distinguish the *Coachella-85 Partners* language from the language at issue in *Prati III*. The relevant part of the Tax Court decision in *Prati III* read: "transactions, as described at § 6621(c)(3)(A)(v), which lacked economic

24

substance."  In the *Coachella-85 Partners* case, the Tax Court decision read: "transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v)."  According to the Varelas, "[t]he difference between [these provisions] cannot be overemphasized."  (Docket Entry No. 61, at 7).  This first argument is unpersuasive.  The additional provision—"so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv)"—independently demonstrates the Tax Court's tax-motivated-transaction determination in *Coachella-85 Partners*.  *See Duffie*, 600 F.3d at 373.  *Duffie* is binding precedent exactly on point, and *McCann* is in accord.  *See* 2012 WL 1886746, at *8.

Second, the Varelas argue that "[t]he preclusive effect of an agreed decision is determined by the intent of the parties."  (Docket Entry No. 54, at 20).  The Behrens affidavit, which the Varelas submitted, states that, in agreeing to the decision with the IRS, he did not intend to admit that the transactions were tax-motivated.  (*See id.*, at 20–24 & Ex. 1).  Because the stipulated decision entered by the Tax Court resulted from the parties' settlement, the decision is construed using "the same basic rules that govern the interpretation of ordinary contracts."  *Nault*, 517 F.3d at 4 (citing *United States v. ITT Cont'l Baking Co.*, 420 U.S. 233, 235–37 (1975)); *accord Young v. IMO Indus., Inc.*, 541 F. Supp. 2d 433, 446 (D. Mass. 2008) (quoting *Nault*); *see also Dean v. City of Shreveport*, 438 F.3d 448, 460 (5th Cir. 2006) ("When interpreting a consent decree, general principles of contract interpretation govern.").  Federal courts "do not ordinarily examine extrinsic evidence to alter or clarify the terms of an otherwise unambiguous contract," *Nault*, 517 F.3d at 7; *accord Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010) (Texas law), and "cannot create an ambiguity where none exists."  *Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996).  The language of the stipulated decision,

25

including references to §§ 6621(c)(3)(A)(iv) and (v), unambiguously establish the Tax Court's determination of tax-motivated transactions in *Coachella-85 Partners*.  *See Nault*, 517 F.3d at 5–6 (rejecting the taxpayers' argument that this language is ambiguous); *see also Duffie*, 600 F.3d at 373 (agreeing that the language in the AMCOR-partnership cases "clearly stated that the partnership's transactions were tax motivated"); *McCann*, 2012 WL 1886746, at *7–8.[6]

If this court need not reach the issue of whether the Tax Court's stipulated decision determined the partnership transactions leading to the adjustments were tax-motivated, the Varelas also lose.  *Kercher* and *Acute Care Specialists II* explain that to resolve that issue, the court would have to inquire into the factual and legal determinations underlying the Tax Court's opinion in that case.  "Section 7422(h) does not bar only claims for refunds *of* partnership items, but rather claims *attributable to* partnership items."  *Acute Care Specialists II*, 2011 WL 6318733, at *8 (citing *Keener*, 551 F.3d at 1367–68) (emphasis in original).  According to *Kercher*, *Acute Care Specialists II*, and *Bush*, the Varelas' claim is attributable to partnership items because it is based on challenging the factual and legal determinations made by the Tax Court in *Coachella-85 Partners*—even if that challenge is framed as an inquiry into what those determinations were.  "If the Court were allowed to revisit whether the adjustments to partnership income and expenses were attributable to TMTs, the Court would be disregarding TEFRA's main purpose of conducting uniform proceedings as to partnership-level items."  *Kercher*, 2012 WL 874325, at *12 (citing *Duffie*, 600 F.3d at 384).

---

[6]"[I]n the exceptional case, a latent ambiguity in seemingly clear contract language may require [a court] to consider extrinsic evidence to determine the actual object of the parties' agreement."  *Nault*, 517 F.3d at 7.  This is not an exceptional case.  There is no latent ambiguity in the stipulated decision.  Through the Behrens affidavit, the Varelas would not only have this court read an ambiguity into the stipulated decision, but also interpret the decision to have a meaning "flatly contradictory to the plain meaning of its terms."  *Nault*, 517 F.3d at 8.

In sum, the Varelas' penalty-interest refund claim under § 6621(c) fails.[7]  The government

is entitled to summary judgment on the Varelas' remaining refund claim for penalty interest assessed

under § 6621(c).

## IV.    Conclusion

The Varelas' motion for reconsideration, (Docket Entry No. 65), is denied.   The

government's motion for summary judgment on the 1985 refund claim, (Docket Entry No. 53), is

granted.  The Varelas' cross-motion on that claim, (Docket Entry No. 54), is denied.  Final judgment

is entered by separate order.

SIGNED on May 29, 2012, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

---

[7]Because this court lacks subject-matter jurisdiction over the Varelas' claim regardless of the claim's timeliness, this court need not address the government's alternative argument that limitations bars the Varelas' claim.  *Compare Duffie*, 600 F.3d at 384–86 (finding claim untimely), *with Kercher*, 2012 WL 874325, at *9–10 (finding claim timely because the Form 4549A, which provided notice of the adjustment, was deficient).